IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CHRISTOPHER D. KRALL,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C13-2034

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................... 2

II.   PROCEDURAL BACKGROUND ............................. 2

III.  PRINCIPLES OF REVIEW ................................. 3

IV.   FACTS ................................................... 5
      A.   Krall's Education and Employment Background .............. 5
      B.   Administrative Hearing Testimony ...................... 5
           1.   Krall's Testimony ............................. 5
           2.   Vocational Expert's Testimony .................... 7
      C.   Krall's Medical History ............................. 8

V.    CONCLUSIONS OF LAW ................................. 10
      A.   ALJ's Disability Determination ...................... 10
      B.   Objections Raised By Claimant ...................... 12
           1.   Medical Evidence, Obesity, RFC Assessment, and Record
                Development ................................. 13
           2.   Credibility Determination ...................... 17

VI.   CONCLUSION ........................................ 21

VII.  ORDER ............................................. 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Christopher D. Krall on May 9, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Krall asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Krall requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On May 27, 2010, Krall applied for both disability insurance benefits and SSI benefits. In his applications, Krall alleged an inability to work since June 1, 2005 due to carpel tunnel syndrome and back, arm, and knee pain.[1] Krall's applications were denied on November 2, 2010. On February 7, 2011, his applications were denied on reconsideration. On February 23, 2011, Krall requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 24, 2012, Krall appeared via video conference with his attorney before ALJ Julie K. Bruntz for an administrative hearing. Krall and vocational expert Roger F. Marquardt testified at the hearing. In a decision dated May 18, 2012, the ALJ denied Krall's claims. The ALJ determined that Krall was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Krall appealed the ALJ's decision. On March 7, 2013, the Appeals Council denied Krall's request for review. Consequently, the ALJ's May 18, 2012 decision was adopted as the Commissioner's final decision.

---

[1] At the administrative hearing held on April 24, 2012, Krall amended his disability onset date to January 1, 2009. *See* Administrative Record at 14 (ALJ's decision); 31-32 (transcript of administrative hearing).

On May 9, 2013, Krall filed this action for judicial review. The Commissioner filed an Answer on September 11, 2013. On October 11, 2013, Krall filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing work that exists in significant numbers in the national economy. On December 10, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 15, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id*. (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

3

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary

outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Krall's Education and Employment Background

Krall was born in 1971. He completed the eleventh grade in school. At the administrative hearing, Krall stated that he earned his GED while in prison.

The record contains a detailed earnings report for Krall. The report covers the time period from 1986 to 2012. Prior to 1989, Krall had minimal earnings (less than $300). From 1989 to 2008, Krall earned between $879.26 (1991) and $39,357.48 (2006). He has no earnings since 2009.

### B. Administrative Hearing Testimony

#### 1. Krall's Testimony

At the administrative hearing, Krall's attorney asked Krall why he stopped working in 2008. Krall replied that he stopped working because he was no longer able to do his job. Specifically, Krall stated that "I couldn't perform, you know, to where I was unable to do my job, you know."[2] Krall also stated that "I can't kneel. I can't stand for long periods of time. I can't sit at the same spot for long periods of time. You know, and they always got me full of medication."[3]

Next, Krall's attorney inquired about Krall's physical problems. Krall explained that he has limited movement with his left arm, bilateral carpal tunnel syndrome, back pain, and knee pain. Krall's attorney asked Krall to describe the limitations caused by his various physical ailments:

---

[2] Administrative Record at 39.

[3] *Id.* at 51.

Q: All right. So let's talk about how these things affect you. How long can you stand at one time?

A: About 15, 20 minutes, maybe.

Q: What happens after you've stood that long?

A: And that's not straight standing. I have to shift back and forth.

Q: Pain?

A: Severe pain.

Q: Where does -- where do you have pain?

A: It shoots through my knees, you know. I get a headache from [pain] if I stand too long. It gives me a headache up through the back of my neck.

Q: Because you're in so much pain?

A: Yup. . . .

Q: Okay. And how long can you sit?

A: . . . It depends if I shift one way or to the other, I probably could go a good 45 [minutes]. . . .

Q: What happens after you've sat that long?

A: Then my back starts to hurt. Back starts to hurt, feet start to go numb. . .

Q: Okay. And how far can you -- and after you've sat for 30 or 40 minutes, how long do you have to get up and move around?

A: I get up and move around . . . could just stand or lean over something for a while, type of thing. I don't know. Probably five, 10, 15 minutes[.] . . .

Q: Okay. All right. And how far can you walk?

A: . . . Oh, about a good half block, and then I'd probably have to sit down.

(Administrative Record at 44-46.) Krall also described difficulties with kneeling, bending over, and climbing ladders. For example, Krall testified that simply bending over to put on his socks is "excruciating." Lastly, Krall stated that he has difficulty gripping, handling, and lifting items, particularly with his left hand and arm.

Krall's attorney concluded by asking Krall to, again, summarize his reasons for believing that he is unable to work:

My back, my arm, my knees. I got one good limb. I can't,
you know, stand, walk. I can't bend. I can't kneel. I can't
stand for long periods of time. I can't sit for long periods of
time. My back -- it can't tolerate too much bending. My
elbow, I can't use. I can't use this arm like I'm supposed to.
I'm left-handed. You know, both my hands are -- I've got
carpal tunnel in them. I mean, they're shot. I can't grasp. I
can't pick up stuff, you know. That's, you know, what I think
is why I can't work.

(Administrative Record at 51-52.)

### 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Roger F. Marquardt with a

hypothetical for an individual who:

could occasionally lift and carry 20 pounds and could
frequently lift and carry 10 pounds. This individual could
stand or walk for two hours in an eight-hour day and sit for six
hours in an eight-hour day. His ability to push and pull,
including the operation of hand and foot controls would be
unlimited within those weights. He could occasionally climb
ramps and stairs; never climb ladders, ropes, or scaffolds;
occasionally balance, stoop; never kneel or crouch or crawl.
He could occasionally lift overhead with the left upper
extremity, and he could do frequent handling with the left
upper extremity.

(Administrative Record at 58.) The vocational expert testified that under such limitations,

Krall could not perform his past relevant work, but could perform the following jobs:

(1) order clerk (2,500 positions in Iowa and 240,000 positions in the nation), (2) addresser

(675 positions in Iowa and 72,000 positions in the nation), and (3) information clerk

(253 positions in Iowa and 26,000 positions in the nation). The ALJ also inquired whether

the addition of frequent unscheduled breaks along with his regularly scheduled breaks to

the initial hypothetical would allow for employment. The vocational expert responded that

such a limitation would preclude competitive employment.

## C. Krall's Medical History

On July 29, 2010, Krall met with Dr. Kyle P. Christianson, M.D., for a consultative examination. Krall reported that he suffered from the following physical problems: knee pain, left elbow pain, carpal tunnel syndrome, and back pain. Dr. Christianson noted that Krall complained of "significant swelling, giving way, and locking with both knees. He is unable to do any type of extended range of motion, kneeling, or prolonged standing or walking without having severe knee pain and swelling for several days afterwards."[4] Dr. Christianson further noted that Krall had limited range of motion, pain, and gripping problems with this left arm. Upon examination, Dr. Christianson determined that Krall:

> has a deformity of this very prominent left knee with posterior subluxation of the lower leg [] compared to the upper leg and hyperextension-type deformity of the knee as well. . . . There is some suggestion for mild atrophy of the musculature of the left leg especially the calf relative to the right as well as the left forearm relative to the right.

(Administrative Record at 259.) Dr. Christianson diagnosed Krall with osteoarthritis. Dr. Christianson concluded that:

> [Krall] states he is limited with lifting because of grip, worse on his left than right side. Otherwise, he states he has good strength in his upper arms and shoulders. He states he has [to] change positions frequently because of back pain primarily. Standing is very limited primarily because of knee pain. Even with short duration, he has problems with standing because of knee pain. He has to change his position frequently. Again, he uses a heel lift due to leg length discrepancy which was confirmed on exam. Cold weather aggravates his pain diffusely.

(Administrative Record at 259.)

---

[4] Administrative Record at 258.

On September 15, 2010, Dr. Gary Cromer, M.D., reviewed Krall's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Krall. Dr. Cromer determined that Krall could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at least two hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Cromer also determined that Krall could occasionally climb ramps/stairs, balance, and stoop, but never climb ladders, ropes, and scaffolds, kneel, crouch, or crawl. Dr. Cromer opined that Krall was limited to occasional reaching and handling with his left upper extremity. Dr. Cromer found no visual, communicative, or environmental limitations.

On October 6, 2010, Dr. Brian Koecher, M.D., a state agency consultative doctor, reviewed Dr. Cromer's RFC assessment for DDS. Dr. Koecher generally agreed with Dr. Cromer's assessment, except for Dr. Cromer's manipulative limitations. Specifically, Dr. Koecher concluded that:

> [Dr. Cromer's] RFC assessment is not unreasonable given the available medical evidence in file as outlined above. The postural limitations are supported based on the significant knee exam and imaging findings. Only overhead reaching should be limited on the [left] (to occasionally). Since [Krall's] grip strength was normal and there is no ongoing treatment for the [carpal tunnel syndrome], he could be expected to frequently handle objects, including grasping, holding, etc., in his [left] hand. No other manipulative restrictions on either hand are warranted. [Krall's] allegations are considered to be partially credible.

(Administrative Record at 276.)

Following Dr. Koecher's review, on October 21, 2010, Dr. Cromer re-evaluated Krall's medical records and provided DDS with a second RFC assessment for Krall. Dr. Cromer's second RFC assessment was identical to his first RFC assessment, except

that he followed Dr. Koecher's finding and specifically limited Krall to occasional overhead reaching with his left upper extremity and frequent handling with his left upper extremity. On January 31, 2011, Dr. Laura Griffith, D.O., reviewed Dr. Cromer's second RFC assessment for Krall and "fully" affirmed it "as written." Dr. Griffith opined that "[t]here is no documentation of a worsening of his condition and failure to seek further care erodes the credibility of [Krall's] allegations."[5]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Krall is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

---

[5] Administrative Record at 298.

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Krall had not engaged in substantial gainful activity since January 1, 2009. At the second step, the ALJ

concluded from the medical evidence that Krall has the following severe impairments: degenerative joint disease of the left knee, degenerative joint disease of the left elbow, and obesity. At the third step, the ALJ found that Krall did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Krall's RFC as follows:

> [Krall] has the residual functional capacity to perform sedentary work . . . in that he can: occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; stand or walk for 2 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. He needs to alternate between sitting and standing every one hour but he would be able to remain on task. His ability to push and pull, including operation of hand and foot controls, is unlimited within the weights stated for lifting and carrying. He can occasionally balance and stoop. He can never kneel, crouch, or crawl. He is left hand dominant and can occasionally reach overhead with his left upper extremity and frequently handle with his left upper extremity. He needs to avoid concentrated exposure to heat and cold.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that Krall was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Krall could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Krall was not disabled.

### B. Objections Raised By Claimant

Krall argues that the ALJ erred in two respects. First, Krall argues that the ALJ failed to fully and fairly develop the record with regard to his functional limitations. Specifically, Krall asserts that the ALJ failed to fully and fairly develop the record by considering all the medical evidence as it relates to her RFC assessment for Krall, particularly the opinions of state agency consultative doctors. Second, Krall argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1.  *Medical Evidence, Obesity, RFC Assessment, and Record Development*

Krall argues that the ALJ failed to properly evaluate the opinions of the state agency medical consultants.  Specifically, Krall argues that the ALJ failed to properly consider the various opinions of non-treating consultative doctors in making her RFC assessment for Krall.  Additionally, Krall contends that the ALJ failed to properly consider his obesity as it relates to his RFC.  Krall concludes that the ALJ's RFC assessment is not supported by substantial evidence in the medical record as a whole.  Thus, Krall maintains that this matter should be remanded so that the ALJ can more fully and fairly develop the record with regard to the state agency consultative opinions, and make an RFC assessment that is based on a fully and fairly developed record.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant.  20 C.F.R. § 404.1527(d).  If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion:  "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors."  *Wiese v. Astrue*, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. §§ 404.1527(d)).  "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians.  The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'"  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, an ALJ also has a duty to develop the record fully and fairly.  *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998).  Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'"

13

*Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In her decision, the ALJ thoroughly addressed the consultative opinions as follows:

> Medical consultants reviewing the record in October 2010 and January 2011 concluded that [Krall] had impairments of degenerative joint disease of the left knee, degenerative joint disease of the left elbow, and obesity. They further concluded that as a result of these impairments, [Krall] had functional limitations which would limit him to: occasionally lifting and carrying 20 pounds and frequently lifting and carrying 10 pounds; standing and/or walking a total of at least two hours in an eight-hour work day; sitting about six hours in and eight-hour workday; and pushing and/or pulling unlimited other than as stated for lifting and carrying. They further concluded that [Krall] could: occasionally climb ramps/stairs, balance and stoop; and never climb ladders/ropes/scaffolds, kneel, crouch, or crawl. [Krall] was limited to occasionally reaching overhead with his left upper extremity and to frequently

handling with his left upper extremity. One medical consultant noted that since [Krall's] grip strength was normal and there was no ongoing treatment for carpal tunnel syndrome, [he] could be expected to frequently handle objects in his left hand and that no other manipulative restrictions on either hand were warranted.

The undersigned gives great weight to the opinion of the medical consultants. They performed a thorough, thoughtful, and objective review of the written evidence of record before them at the time of their review and applied the Social Security regulations with which they are expertly familiar. Their opinions are not inconsistent with the treating medical evidence of record which reflects minimal complaints of, evaluation of, and treatment for alleged disabling knee problems, left elbow problems, bilateral carpal tunnel syndrome symptoms, and back problems.

(Administrative Record at 20.)

Here, the ALJ thoroughly reviewed Krall's medical records and fully considered the opinions of all medical sources, including the state agency consultative reviewing sources.[6] Specifically, the ALJ addressed the state agency consultative opinions and determined that great weight should be given to their opinions.[7] While the ALJ did not specifically address Dr. Cromer's September 2010 RFC assessment for Krall, the ALJ did address Dr. Koecher's review of the September 2010 RFC assessment, and Dr. Cromer's subsequent RFC assessment in October 2010. Significantly, the ALJ pointed out that Dr. Koecher "noted that since [Krall's] grip strength was normal and there was no ongoing treatment for carpal tunnel syndrome, [he] could be expected to frequently handle objects in his left hand and that no other manipulative restrictions on either hand were

---

[6] *See* Administrative Record at 18-20.

[7] *Id.* at 20.

warranted."[8]  In October 2010, following Dr. Koecher's review, Dr. Cromer, again, reviewed Krall's medical records and provided a new RFC assessment for Krall. Dr. Cromer agreed with Dr. Koecher's analysis, and specifically limited Krall to occasional overhead reaching with his left upper extremity and frequent handling with his left upper extremity. Otherwise, Dr. Cromer's October RFC assessment was unchanged from his September RFC assessment. Moreover, in January 2011, Dr. Griffith reviewed Dr. Cromer's October 2010 RFC assessment and affirmed it as written. Thus, the ALJ properly pointed out that there are three consultative doctors who agree that Krall is limited to occasional overhead reaching with his left upper extremity and frequent handling with his left upper extremity. The Court concludes that the ALJ properly considered and weighed the opinion evidence provided by the consultative medical sources. Specifically, the ALJ explained her findings with regard to the consultative agency doctors' opinions, and provided "good reasons" both explicitly and implicitly for the weight given to those opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967.

With regard to the issue of obesity, the ALJ explicitly addressed Krall's obesity in making her disability determination.[9]  Furthermore, the ALJ determined that Krall's obesity is a severe impairment.[10]  While it is arguable that the ALJ could have better articulated her consideration of the effect of Krall's obesity on his functional limitations, the Court believes that in addressing Krall's obesity at various points in her decision, the ALJ fully considered Krall's obesity in making her RFC and disability determination. In drawing this conclusion, the Court bears in mind that while an ALJ is required to fully and

---

[8] *Id.*

[9] *See* Administrative Record at 18-20 (discussion of Krall's obesity in various medical reports).

[10] *Id.* at 16.

fairly develop the record, he or she "'is not required to discuss every piece of evidence submitted.'" *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). Furthermore, failure of an ALJ to cite specific evidence is not an indication that he or she failed to consider such evidence. *Id.* Moreover, there is nothing in the record to suggest that outside the limitations described in the ALJ's RFC assessment for Krall, that Krall has additional limitations due to his obesity. Therefore, having reviewed the entire record, the Court finds that the ALJ fully and fairly developed the record with regard to the issue of Krall's obesity.

In summary, having reviewed the entire record, the Court finds that the ALJ properly considered Krall's medical records, observations of treating and non-treating physicians, and Krall's own description of his limitations in making the RFC assessment for Krall.[11] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, including the opinions of state agency consultative doctors and Krall's obesity, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Credibility Determination*

Krall argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Krall maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Krall's testimony, and properly evaluated the credibility of his subjective complaints.

---

[11] *See* Administrative Record at 18-20.

17

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb

the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In addressing Krall's credibility, the ALJ made the following observations:

> After careful consideration of the evidence, the undersigned finds that [Krall's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however [Krall's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .

> [Krall] resides in a hotel room which has a microwave and refrigerator. He has no housekeeping service. He watches a lot of television. His minor son, age 8, visits him. Shortly after filing for disability, in June 2010, [Krall] indicated he prepared meals, performed household chores including laundry and repairs, drove, and shopped. He appeared to indicate he has some problems reaching with his left arm when performing personal care and did best using his right arm. He indicated he could pay attention, complete tasks, and get along with authority all right.

> [Krall's] work history is inconsistent with his allegations of disability. [Krall] worked at least several years at a substantial gainful activity level with the conditions he alleges are disabling. [He] worked through 2008. [Krall] testified he did

not think he could perform the construction job he left in 2008. He felt like he was being pushed out. He walked out on the job. He also testified that his condition had gotten a lot worse, but this is not supported by the medical evidence of record.

(Administrative Record at 18, 20.) The ALJ further noted that:

> Although the undersigned does not find credible [Krall's] testimony he can stand only 15 to 20 minutes and sit only 30 to 45 minutes, the undesigned is persuaded [Krall's] back and knee problems make reasonable a limitation of needing to alternate between sitting and standing every one hour, although he is able to remain on task when doing so.

(Administrative Record at 21.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Krall's treatment history, medical history, work history, functional restrictions, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Krall's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Krall's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record in this matter. Specifically, the ALJ properly addressed, considered, and weighed the medical evidence and opinions in the record, including the opinions of the state agency consultative doctors and Krall's obesity. Furthermore, the ALJ properly considered Krall's medical records, observations of treating and non-treating physicians, and Krall's own description of his limitations in making her RFC assessment for Krall. Lastly, the Court finds that the ALJ properly determined Krall's credibility with regard to his subjective complaints of pain and disability. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;

2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3. The Clerk of Court is directed to enter judgment accordingly.

DATED this __16th__ day of April, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA